792 S.E.2d 44

**STATE of West Virginia Respondent**

v.

**DAVID K., Petitioner**

**No. 15–0543**

Supreme Court of Appeals of West Virginia.

Submitted: September 14, 2016

Filed: October 11, 2016

---

Brett M. Ferro, Esq., Public Defender Corporation for the Second Judicial Circuit, Moundsville, West Virginia, Counsel for the Petitioner.

Patrick Morrisey, Attorney General, David A. Stackpole, Assistant Attorney General,

Charleston, West Virginia, Counsel for the Respondent.

Chief Justice Ketchum:

Petitioner David. K. appeals following his conviction on two counts of felony sexual assault and two counts of felony sexual abuse by a custodian. These convictions stem from an incident involving David K.'s teenage stepdaughter, A.R. During the trial, A.R. began testifying in-court but became unresponsive when the State questioned her about David K.'s alleged sexual abuse. Thereafter, the circuit court consulted with counsel for the State and David K., and ordered that A.R. testify by live closed-circuit television. Trial counsel for David K. did not object to A.R. testifying by live closed-circuit television

On appeal, David K. asserts that the circuit court erred by ordering A.R. to testify by live closed-circuit television. After review, we affirm David K.'s convictions.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2015, a Wetzel County Grand Jury indicted David K. on three felony counts of sexual assault in the third degree in violation of W.Va. Code § 61–8B–5(a)(2) [2000], and three felony counts of sexual abuse by a custodian in violation of W.Va. Code § 61–8D–5(a) [2010]. These six felony offenses were based on one alleged incident in which David K. had sexual contact with his step-daughter, A.R., who was fourteen-years-old at the time of the alleged incident.

The prosecutor met with A.R. a few days before the trial. The prosecutor stated that during this private meeting A.R. "was able to articulate what happened. It took about an hour to get her there, but she was able to articulate." While it took A.R. an hour to articulate what happened during this private

meeting, the prosecutor did not file a motion with the circuit court requesting that A.R. testify by closed-circuit television during the trial.

During the trial, Sergeant Brian Collins, a West Virginia State Policeman, testified that he conducted an interview with David K. in April 2014 in which David K. admitted that he "had sex" with A.R. on one occasion in the living room of his residence. When asked how old A.R. was at the time this incident occurred, David K. stated, "fifteen, I mean fourteen." David K. further stated that he and A.R. were planning on getting married once she turned eighteen. Sergeant Collins prepared a written report of this interview that David K. signed.[1] Sergeant Collins testified that after this interview, he drove David K. back to his residence in a police cruiser. A video recording of this trip in the police cruiser was made and played for the jury. David K. made incriminating statements while in the police cruiser, including the following: (1) "I should be put away for life," (2) "I wish I could go back in time and change what happened," and (3) "there's some pretty sick people out there, and I just realized I'm one of them."[2]

Another West Virginia State Policeman, Sergeant Charlie Kush, testified that he also conducted an interview with David K. in April 2014, in which David K. admitted that he had sexual intercourse with A.R. Mary Jane R., A.R.'s mother and David K.'s wife, testified that David K. admitted to her that he had sexually abused A.R. on one occasion.

A.R. also testified during the trial. She was fifteen years old at the time of the trial. A.R. answered a few preliminary questions but became unresponsive when the State asked her about the alleged sexual abuse by David K. After A.R. failed to reply to a number of questions, the trial judge asked the parties to approach the bench, whereupon the trial judge stated:

---

1. The written statement prepared by Sergeant Collins was in a question and answer format. Sergeant Collins wrote down the questions and answers and David K. signed the bottom of each page of the written statement.

2. A transcript of this video recording is not in the appendix-record. However, when David K. was asked during cross-examination whether the video in the police cruiser included the three statements set forth above, David K. agreed that he had made those statements.

The transcript reveals that the testimony has been essentially nil at this point. The young lady appears to be becoming traumatized—my words—as [sic] this traditional method of testimony.

What I suggest and will implement, subject to counsels' thoughts, is having her taken to magistrate court ... have her testify by audio/video system that the court utilizes in magistrate court for purposes of arraignment, and the circuit court uses for reasons, and have her testify via video link. Any objections by the State?

Neither party objected to the trial judge's plan to have A.R. testify via live closed-circuit television. Thereafter, A.R. was taken to the magistrate court and testified via live closed-circuit television that was broadcast in the courtroom in front of the jury. During her live closed-circuit television testimony, A.R. testified that David K. had sexual contact with her. Following her testimony, the State rested. At the conclusion of the State's case, the circuit court dismissed counts five and six of the indictment.[3]

The defense called the defendant, David K., to testify. He testified that he was never alone with A.R. and denied having sexual contact with her. David K. did not deny that he confessed to sexually abusing A.R. when he was questioned by the police in April 2014. However, he stated that this confession "was false" and explained that he gave this false confession because "I just wanted to go home." Further, David K. was asked if he remembered telling his wife that he sexually abused A.R. and he stated, "I don't know. I really don't know." During cross-examination, David K. did not dispute that he had made incriminating statements while he was in the police cruiser.

The jury convicted David K. of the four remaining counts contained in the indictment. Thereafter, David K. filed a motion for a new trial, alleging that the trial judge's *sua sponte* decision to allow A.R. to testify via live closed-circuit television was improper under W.Va. Code § 62–6B–1 [2001] *et seq.* After conducting a hearing, the circuit court denied David K.'s motion for a new trial. It

thereafter sentenced David K. to an effective incarceration term of twenty to forty years. David K. appeals the circuit court's order denying his motion for a new trial.

## II.

## STANDARD OF REVIEW

This Court has previously held that:

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syllabus Point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). We have further recognized that "[i]t is well settled that a trial court's rulings on the admissibility of evidence, 'including those affecting constitutional rights, are reviewed under an abuse of discretion standard.'" *State v. Kaufman*, 227 W.Va. 537, 548, 711 S.E.2d 607, 618 (2011) (citing *State v. Marple*, 197 W.Va. 47, 51, 475 S.E.2d 47, 51 (1996)).

## III.

## ANALYSIS

The issue in this case is whether the circuit court erred when it ordered the child witness, A.R., to testify via live closed-circuit television. David K. argues that his rights under the Confrontation Clause—set forth in the Sixth Amendment to the United States Constitution and in Section 14 of Article III of the West Virginia Constitution—were violated when the circuit court, *sua sponte*, ordered A.R. to testify via live closed-circuit television. David K. asserts that the circuit court failed to follow the mandatory procedural safeguards set forth in W.Va. Code § 62–6B–1 *et seq.* that must be observed before a child witness may testify via live closed-circuit television.

---

**3.** Counts five and six alleged that David K. forced A.R. to engage in oral sex. A.R.'s testimony did not support this allegation and the circuit court dismissed these two charges.

By contrast, the State argues that the procedural safeguards contained in W.Va. Code § 62–6B–1 *et seq.* were "not triggered as there were no pre-trial motions regarding the use of closed-circuit television for the child victim's testimony. The Trial Court's decision to use closed-circuit testimony did not fall under [W.Va. Code § 62–6B–1 *et seq.*]." Rather, the State asserts that the circuit court's decision to permit A.R. to testify via live closed-circuit television was proper under the court's "inherent authority ... to manage issues in the courtroom during trial." Further, the State contends that any error committed by the trial court was not plain error, and did not affect David K.'s substantial rights.

At the outset, we note that neither party cited or discussed *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), a case in which the United States Supreme Court addressed the Confrontation Clause in the context of whether a child witness in a sexual abuse case may testify via live closed-circuit television. Our analysis of this issue is guided by the Supreme Court's holding in *Maryland v. Craig*, and by W.Va. Code § 62–6B–1 *et seq.*, a statute that was enacted after the Supreme Court's ruling in *Maryland v. Craig*. We begin our analysis with a brief review of the Confrontation Clause.

The Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution guarantee an accused the right to confront and cross-examine witnesses. The Confrontation Clause contained in the Sixth Amendment provides: "In all criminal prosecutions, the accused shall ... be confronted with the witnesses against him[.]" Likewise, the Confrontation Clause contained in the West Virginia Constitution, Section 14 of Article III, provides that in the "[t]rials of crimes, and misdemeanors ... the accused shall be ... confronted with the witness against him[.]"

The United States Supreme Court examined whether a child witness testifying by live closed-circuit television violates the Confrontation Clause in *Maryland v. Craig, supra*. In *Craig*, the Court rejected a Confrontation Clause challenge to a Maryland statute that allowed a child witness in a sexual abuse case to testify via live closed-circuit television. 497 U.S. at 860, 110 S.Ct. 3157. The Court explained that the Confrontation Clause "reflects a preference for face-to-face confrontation at trial," but that this preference "must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 849, 110 S.Ct. 3157 (internal quotations omitted). It emphasized, however, that the preference is a strong one and that a defendant's Sixth Amendment confrontation right "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850, 110 S.Ct. 3157.

The Supreme Court in *Craig* set out three findings that a court must make before allowing a child witness to testify by live closed-circuit television. *Id.* at 855–56, 110 S.Ct. 3157. These findings must be made after a court holds an evidentiary hearing and considers and determines on a case-by-case basis whether the use of live closed-circuit television testimony is necessary to protect the welfare of a particular child. The Supreme Court described this process and the three specific findings that must be made as follows:

> The requisite finding of necessity must of course be a case-specific one: **The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant.** Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma. In other words, if the state interest were merely the interest in protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child could be permitted to testify in less

**40**

intimidating surroundings, albeit with the defendant present. **Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify.**

*Id.* at 855–56, 110 S.Ct. 3157 (internal citation and quotation omitted, emphasis added).

Eleven years after the Supreme Court's decision in *Maryland v. Craig,* our Legislature enacted W.Va. Code § 62–6B–1, entitled "Protection and Preservation of Statements and Testimony of Child Witness." Trial Court Rule 14.03(b) [2003] instructs a circuit court in a criminal proceeding[4] to follow this statute. Trial Court Rule 14.03(b) states: "The court may use videoconferencing to obtain the testimony of a child witness in accordance with West Virginia Code § 62–6B–1 to –4."

West Virginia Code § 62–6B–1 *et seq.* allows a child[5] to testify outside the physical presence of a defendant when required by "the interests of justice." The statute seeks to balance the welfare of a child with the defendant's constitutional right to confront his/her accuser. The purpose of the statute is set forth explicitly in W.Va. Code 62–6B–1 [2001]:

> The Legislature hereby finds that there are rare occasions when the interests of justice cannot be served because a child who is alleged to be the victim of certain offenses is unable to testify while in the physical presence of the defendant in the courtroom.
>
> The Legislature further finds that the constitutional right of the accused to be confronted with the witnesses against him or her must be protected and that this constitutional guarantee can be protected while, at the same time, allowing a child to testify outside of the physical presence of a defendant in the courtroom.

The Legislature further finds that a child, more so than an adult, may be subject to coercion and pressure by interested adults and the interests of justice would be served by requiring, unless infeasible, memorialization of child victim statements in certain criminal matters.

In order to accomplish the twin goals of protecting child victims when justice so requires and ensuring the constitutional right of a defendant to confront his/her accuser, W.Va. Code § 62–6B–3(a) requires "the prosecuting attorney, the child's attorney, or the child's guardian ad litem" to file a written motion requesting that a child witness testify via live closed-circuit television. West Virginia Code § 62–6B–3(a) does not permit a trial judge to *sua sponte* order a child witness to testify via live closed-circuit television.

After "the prosecuting attorney, the child's attorney, or the child's guardian ad litem" files a motion requesting that a child testify via live closed-circuit television, the circuit court must conduct an evidentiary hearing and make four specific findings. This requirement is set forth in W.Va. Code § 62–6B–3(b). It states:

> Prior to ordering that the testimony of a child witness may be taken through the use of live, two-way closed circuit television, the circuit court must find by clear and convincing evidence, after conducting an evidentiary hearing on the issue, that:
>
> 1) The child is otherwise competent;
>
> 2) That, absent the use of live, closed-circuit television the child witness will be unable to testify due solely to being required to be in the physical presence of the defendant while testifying;
>
> 3) The child witness can only testify if live, two-way closed-circuit television is used in the trial; and
>
> 4) That the state's ability to proceed against the defendant without the child

---

**4.** The title of Trial Court Rule 14.03 is "Criminal Proceedings in Circuit Courts."

**5.** West Virginia Code § 62–6B–2(1) [2013] defines "[c]hild witness" as "a person under the age of sixteen years of age who is or will be

called to testify in a criminal matter concerning an alleged violation of the provisions of sections three, four, five and seven, article eight-b, chapter sixty-one of this code in which the child is the alleged victim."

witness' live testimony would be substantially impaired or precluded.

Prior to making the four specific findings required by W.Va. Code § 62–6B–3(b), the circuit court must consider the five factors set forth in W.Va. Code § 62–6B–3(c):

(1) The age and maturity of the child witness;

(2) The facts and circumstances of the alleged offense;

(3) The necessity of the child's live testimony to the prosecution's ability to proceed as well as any prejudice to the defendant by allowing testimony through closed-circuit television;

(4) Whether or not the facts of the case involve the alleged infliction of bodily injury to the child witness or the threat of bodily injury to the child or another; and

(5) Any mental or physical handicap of the child witness.

Additionally, the circuit court shall appoint a psychiatrist or psychologist to provide the court with an expert opinion. This expert psychiatrist or psychologist must file a written report with the circuit court at least thirty days prior to the evidentiary hearing. This requirement is set forth in W.Va. Code § 62–6B–3(d):

In determining whether to allow a child witness to testify through live, closed-circuit television the court shall appoint a psychiatrist or a licensed psychologist with at least five years clinical experience who shall serve as an advisor or friend of the court to provide the court with an expert opinion as to whether, to a reasonable degree of professional certainty, the child witness will suffer severe emotional harm, be unable to testify based solely on being in the physical presence of the defendant while testifying and that the child witness does not evidence signs of being subjected to undue influence or coercion. The opinion of the psychiatrist or licensed psychologist shall be filed with the circuit court at least thirty days prior to the final hearing on the use of live, closed-circuit television and the defendant shall be allowed to review the opinion and present evidence on the

issue by the use of an expert or experts or otherwise.

Further, if a court determines that a child witness may testify via live closed-circuit television, the defendant may "elect to absent himself from the courtroom during the child witness' testimony. If the defendant so elects the child shall be required to testify in the courtroom." W.Va. Code § 62–6B–4(a) [2001]. The defendant must then be provided with a live, two-way television connection to the courtroom. *See* W.Va. Code § 62–6B–4(b)(2). Finally, if the use of live closed-circuit television is used, the circuit court must instruct the jury, unless the defendant waives such an instruction, that "the use of live, closed-circuit television is being used solely for the child's convenience, that the use of the medium cannot as a matter of law and fact be considered as anything other than being for the convenience of the child witness and that to infer anything else would constitute a violation of the oath taken by the jurors." W.Va. Code § 62–6B–4(c).

■ Based on the foregoing, we hold that pursuant to W.Va. Code § 62–6B–3(a), a circuit court may order the testimony of a child witness be given via live closed-circuit television upon (1) a written motion filed by the prosecuting attorney, the child's attorney, or the child's guardian ad litem and (2) the requisite findings of fact determined in accordance with W.Va. Code § 62–6B–3(b).

■ Prior to permitting the trial testimony of a child witness to be given via live two-way closed-circuit television, the circuit court must conduct an evidentiary hearing and consider the necessity of allowing such testimony in light of the five factors contained in W.Va. Code § 62–6B–3(c) [2013]. Thereafter, the circuit court must find by clear and convincing evidence that: (1) The child is otherwise competent; (2) Absent the use of live, closed-circuit television, the child witness will be unable to testify due solely to being required to be in the physical presence of the defendant while testifying; (3) The child witness can only testify if live, two-way closed-circuit television is used in the trial; and (4) The State's ability to proceed against the defendant without the child witness' live

testimony would be substantially impaired or precluded. W.Va. Code § 62–6B–3(b) [2013].

Pursuant to W.Va. Code § 62–6B–3(d), a circuit court considering whether to allow a child witness to testify via live closed-circuit television shall appoint a psychiatrist or a licensed psychologist with at least five years of clinical experience who shall provide the court with an expert opinion, to a reasonable degree of professional certainty, as to whether the child witness will suffer severe emotional harm, be unable to testify based solely on being in the physical presence of the defendant while testifying, and that the child witness does not evidence signs of being subjected to undue influence or coercion. The opinion of the expert psychiatrist or licensed psychologist must be filed with the court at least thirty days prior to the final evidentiary hearing and the defendant shall be allowed to review this opinion and present his/her own expert opinion on the issue.

Further, pursuant to W.Va. Code § 62–6B–4(a), if the circuit court determines that a child witness may testify via live closed-circuit television, the defendant may elect to absent himself from the courtroom during the child witness' testimony. If the defendant so elects, the child witness is required to testify in the courtroom.

Finally, pursuant to W.Va. Code § 62–6B–4(c), if a child witness is permitted to testify via live closed-circuit television, the circuit court must instruct the jury, unless the defendant waives such an instruction, that "the use of live, closed-circuit television is being used solely for the child's convenience, that the use of the medium cannot as a matter of law and fact be considered as anything other than being for the convenience of the child witness and that to infer anything else would constitute a violation of the oath taken by the jurors."

Applying this holding to the present case, we note that no written motion was filed requesting that A.R. testify via live closed-circuit television. A.R. met with the prosecutor a few days before the trial and it took her an hour to articulate what happened during this private meeting. However, the prosecutor did not file a motion with the circuit court requesting that A.R. testify by closed-circuit television. Because no motion was filed, the circuit court did not have the opportunity to hold an evidentiary hearing and make the required findings set forth in W.Va. Code § 62–6B–3(b). Further, because no motion was filed, the circuit court was unable to appoint a psychiatrist or psychologist to render a timely expert opinion on whether A.R. should be permitted to testify via live closed-circuit television. Also, after the circuit court ruled that A.R. could testify via live closed-circuit television, David K. was not given the option to "absent himself from the courtroom." If David K. chose to "absent himself" from the courtroom, A.R. would have been required to continue testifying in the courtroom pursuant to W.Va. Code § 62–6B–4(a).

While the numerous procedural safeguards contained in W.Va. Code § 62–6B–1 et seq. were not followed by the circuit court, counsel for David K. did not object to the circuit court's ruling that A.R. testify via live closed-circuit television. Thus, on appeal, David K. argues that this Court should review these errors under a plain error analysis. The errors in this case involve David K.'s Sixth Amendment confrontation rights as set out by the Supreme Court in *Maryland v. Craig*.

This Court has held: "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995); *see also* Syllabus Point 2, *State v. White*, 231 W.Va. 270, 744 S.E.2d 668 (2013). Moreover, this Court has held that "[a]lleged errors of a constitutional magnitude will generally trigger a review by this Court under the plain error doctrine." *State v. Salmons*, 203 W.Va. 561, 571 n. 13, 509 S.E.2d 842, 852 n. 13 (1998). Similarly, in Syllabus Point 4 of *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975), this Court explained: "Although it is a well-settled policy that the Supreme Court of Appeals normally will not rule upon unassigned or imperfectly assigned errors, this Court will take cognizance of plain error involving a fundamental right of an accused which is protected by the

Constitution." In *State v. Lightner*, 205 W.Va. 657, 659, 520 S.E.2d 654, 662 (1999), this Court stated, "In criminal cases, plain error is error which is so conspicuous that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it."

We have also stated: "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syllabus Point 5, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975). Indeed, an error involving a deprivation of a constitutional right may be regarded as harmless only "if there is no reasonable possibility that the violation contributed to the conviction." Syllabus Point 20, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). In Syllabus Point 3 of *State v. Frazier*, 229 W.Va. 724, 735 S.E.2d 727 (2012), this Court explained: "In a criminal case, the burden is upon the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *See also Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (the burden is on "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."). With the foregoing in mind, we proceed to consider whether it was plain error for the circuit court to permit A.R. to testify via live closed-circuit television without following the procedural safeguards contained in W.Va. Code § 62–6B–1 *et seq.*

Under the first principle of the plain error doctrine outlined in *Miller*, we must determine if there was error. "Deviation from a legal rule is 'error' unless the rule has been waived." *U.S. v. Olano*, 507 U.S. 725, 732–33, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Waiver is different from forfeiture:

> Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a

rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right—the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

Syllabus Point 8, *Miller, supra.* As the circuit court noted in its ruling denying David K.'s motion for a new trial, "I do not find that the defendant waived. If there is clear error, there is no waiver. Can't waive clear error." We agree. For the reasons set forth above, we find the circuit court's failure to follow the numerous procedural safeguards, set forth in W.Va. Code § 62–6B–1 *et seq.*, before permitting A.R. to testify via live closed-circuit television was error.[6] These procedural safeguards are contained not only in the aforementioned statute, but are also required by Trial Court Rule 14.03(b), and by the Supreme Court's holding in *Maryland v. Craig.*

Having determined that error existed in the proceedings below, we move on to the second requirement of *Miller* and determine if the circuit court's error was plain, which simply means clear or obvious. *Miller, Id.* at 18, 459 S.E.2d at 129. The numerous errors regarding the failure to provide David K. with the procedural safeguards contained in W.Va. Code § 62–6B–1 *et seq.*, constitute clear error. As stated, no written motion, which is required by W.Va. Code 62–6B–3(a), was filed requesting that A.R. testify via live closed-circuit television. Thus, the circuit court was not able to conduct the mandatory evidentiary hearing and make the findings required by W.Va. Code § 62–6B–3(b). Similarly, the circuit court was unable to appoint a psychologist or psychiatrist as required by W.Va. Code § 62–6B–3(d). Finally, the circuit

---

6. We emphasize again that the circuit court's error was largely due to the failure of a written motion being filed pursuant to W.Va. Code § 62–6B–3(a). Because such a motion was not filed,

the circuit court did not have the opportunity to comply with the requirements contained in W.Va. Code § 62–6B–1 *et al.*

court did not give David K. the option of leaving the courtroom once it determined that A.R. should testify via live closed-circuit television. David K. should have been given the option of leaving the courtroom under W.Va. Code § 62–6B–4(a). For these reasons, the error in this case is clear.

■ We now turn to the third and fourth *Miller* requirements. Justice Cleckley addressed the third prong of *Miller* in Syllabus Point 3 of *State v. Marple*, 197 W.Va. 47, 475 S.E.2d 47 (1996):

In determining whether the assigned plain error affected the "substantial rights" of a defendant, the defendant need not establish that in a trial without the error a reasonable jury would have acquitted; rather, the defendant need only demonstrate the jury verdict in his or her case was actually affected by the assigned but unobjected to error.

■ The fourth *Miller* principle, regarding the fairness, integrity, and reputation of judicial proceedings, "requires a case-by-case exercise of discretion." *State v. LaRock*, 196 W.Va. 294, 317, 470 S.E.2d 613, 636 (1996). In *State v. Marple*, 197 W.Va. at 52, 475 S.E.2d at 52, we found that:

Once a defendant has established the first three requirements of *Miller*, we have the authority to correct the error, but we are not required to do so unless a fundamental miscarriage of justice has occurred. Otherwise, we will not reverse unless, in our discretion, we find the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

(Citations omitted).

In the present case, the State presented four different instances in which David K. confessed to sexually abusing A.R.: (1) in an oral statement provided to Sergeant Collins, which was reduced to writing and signed by David K.; (2) in an oral statement made to Sergeant Kush; (3) in an oral statement made in the police cruiser that was recorded on video and played for the jury; and (4) in a statement made to his wife. While David K. testified at trial that he did not sexually abuse A.R., his only explanation for the written confession he provided to the police was

that he gave a "false confession" because he "wanted to go home." We note that David K. was not under arrest when he made this statement to the police. Further, David K. did not dispute that he made incriminating statements while in the police cruiser that were recorded on video. Also, he did not dispute that he told his wife he sexually abused A.R., instead, when asked if he had made this statement, he testified, "I don't know."

Next, we note that the circuit court's deviations from W.Va. Code § 62–6B–1 *et seq.* did not prevent counsel for David K. from confronting his accuser, A.R. Counsel for David K. did not object to the circuit court's suggestion that A.R. testify by closed-circuit television. Importantly, counsel for David K. conducted a full cross-examination of A.R., and the jury had the opportunity to assess A.R.'s testimony and demeanor during this cross-examination.

In sum, the State presented evidence of four different instances in which David K. confessed to sexually abusing A.R., including incriminating statements he made that were recorded on video and in a written confession that he signed. Further, the complained of error occurred without an objection from defense counsel, and did not prevent David K. from confronting and cross-examining his accuser, A.R. We therefore find that David K. has failed to demonstrate that "the jury verdict in his case was actually affected by the assigned but unobjected to error." We conclude that under the circumstances of this case—in which the State presented four different instances of David K. confessing to the crime, and in which counsel for David K. cross-examined A.R.—the circuit court's failure to follow the procedural safeguards contained in W.Va. Code § 62–6B–1 *et seq.* was harmless error. For these reasons, we find that David K. cannot satisfy the third *Miller* requirement.

■ Assuming arguendo that David K. could satisfy the third requirement of *Miller*, we find that because of the overwhelming evidence of David K.'s guilt, including the four instances in which he confessed to sexually abusing A.R., this is not a case where a "fundamental miscarriage of justice has oc-

curred." This conclusion is bolstered by the fact that the error in this case occurred without an objection from defense counsel. Further, the error did not prevent counsel for David K. from cross-examining A.R. Because counsel for David K. cross-examined A.R., the jury was able to fully assess her credibility and demeanor. Similarly, we find that the error in this case is not one that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." The State has proven beyond a reasonable doubt that the "constitutional error complained of did not contribute to the verdict obtained."

## IV.

## CONCLUSION

Based on the foregoing, we affirm David K.'s convictions.

Affirmed.

JUSTICE BENJAMIN concurs and reserves the right to file a concurring Opinion.

JUSTICE LOUGHRY concurs, in part, and dissents, in part, and reserves the right to file a separate Opinion.

JUSTICE WORKMAN concurs, in part, and dissents, in part, and reserves the right to file a separate Opinion.

LOUGHRY, Justice, joined by WORKMAN, Justice, concurring, in part, and dissenting, in part:

I join Justice Workman's separate opinion in full. I write separately to emphasize the authority of our circuit courts to control matters that arise during trial and with particular regard to a child who is a victim of a sex crime and who is testifying against his or her perpetrator. The majority finds the trial court erred when it allowed the child victim to testify via closed-circuit television without first following the procedure set forth in West Virginia Code §§ 62–6B–1 to –4 (2014). Concluding that such error does not survive

a plain error analysis, the majority affirms the petitioner's conviction. While I concur in the majority's decision to affirm the conviction, I disagree with its conclusion that the trial court erred in this matter, which arises from its faulty analysis concerning West Virginia Code §§ 62–6B–1 to –4 and the precepts set forth in *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

Here, the child victim was called to the witness stand and answered preliminary questions, such as her name and address. Once the prosecutor began to question the victim regarding her step-father's sexual assault of her, the victim would not testify. A sidebar was held during which the trial judge questioned the victim concerning matters unrelated to the criminal allegations. While able to respond to those questions, the victim also said she was nervous and that there was nothing that would calm her down. Thereafter, the prosecutor resumed his direct examination with specific regard to the criminal allegations and, again, the victim was silent. After several more unsuccessful attempts to elicit answers from the child victim, the trial judge initiated a second sidebar during which he expressed concern that the child was becoming traumatized. The trial judge suggested that the child be taken to the local magistrate court to complete her testimony via live closed-circuit television. Although the trial judge expressly sought alternative suggestions and/or objections to proceeding in that manner, counsel offered none. The petitioner's only request was that a deputy be present in the room during the child's testimony to guard against coaching.[1] Thereafter, the victim's testimony was completed via live closed-circuit television, including the petitioner's cross-examination of the victim. This procedure clearly met the requirements of *Maryland v. Craig* and preserved the petitioner's constitutional right to confront the witness against him.

Although the majority finds the procedure set forth in West Virginia Code §§ 62–6B–1 to –4 is mandatory, such conclusion impinges

---

1. The request appears to have been made because the child's aunt was accompanying her to the magistrate court. In the end, the victim did

not answer questions regarding the sexual assault and abuse until her aunt and the deputy left the room and she was alone.

upon this Court's constitutional mandate to determine evidentiary and substantive procedural issues. Such mandate may not be usurped through a legislative enactment. Further, even if the majority were correct in its conclusion that this statutory procedure is mandatory, here, the prosecutor had no reason to believe that the child victim would be unable to testify at trial. Consequently, he had no cause to invoke this statutory, pretrial procedure to obtain the child's testimony via closed-circuit television. Importantly, this statutory procedure is silent regarding the child victim who becomes traumatized while on the witness stand, calling into question its applicability under these facts and circumstances.

Once the child victim became so traumatized that she could not respond to questioning, it was incumbent upon the trial court to act, not only to protect the child's well-being, but also to protect and ensure the petitioner's right to confront the witnesses against him.[2] Indeed, "[t]o safeguard the integrity of its proceedings and to insure the proper administration of justice, a circuit court has inherent authority to conduct and control matters before it in a fair and orderly fashion." Syl. Pt. 2, *State v. Fields*, 225 W.Va. 753, 696 S.E.2d 269 (2010).

As indicated above, the trial judge sought suggestions and objections from counsel— none were given. Critically, the petitioner never mentioned West Virginia Code § 62–6B–3 during trial. Instead, he was silent on the issue until convicted, after which he

moved for a new trial on the basis that West Virginia Code § 62–6B–1 to –4 had not been followed.[3]

In short, I firmly believe the trial court properly acted within its authority to protect the "integrity of its proceedings" while "insur[ing] the proper administration of justice." *Fields*, 225 W.Va. at 753, 696 S.E.2d at 269, syl. pt. 2, in part. For these reasons, as well as those set forth in Justice Workman's separate opinion, I respectfully concur, in part, and dissent, in part, to the majority's decision in this case.

WORKMAN, Justice, joined by LOUGHRY, Justice, concurring, in part, and dissenting, in part:

I concur with the decision to affirm the petitioner's convictions, but vehemently dissent with the manner in which the holding is reached. Ultimately, this case requires the Court to determine whether the petitioner's rights under the Confrontation Clause—set forth in the Sixth Amendment to the United States Constitution and in section 14 of article III of the West Virginia Constitution— were violated.[1] In so doing, the majority has made an error of constitutional magnitude in permitting the legislative branch of government to define the parameters of constitutionality. The majority compounds this error by failing to reiterate the longstanding principle that it is the sole prerogative of the Supreme Court of Appeals to determine issues relating to the admissibility of evidence and substantive judicial procedure. The ma-

---

**2.** *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him[.]"); *see also* W.Va. Const. art. III, § 14 ("[T]he accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witnesses against him....").

**3.** Even if the petitioner were correct in his assignment of error, it may well have been invited error. *See State v. Crabtree*, 198 W.Va. 620, 627, 482 S.E.2d 605, 612 (1996) (" 'Invited error' is a cardinal rule of appellate review applied to a wide range of conduct.... Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences.").

**1.** The Sixth Amendment of the United States Constitution, as applied to the states through the

Fourteenth Amendment, provides in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. Const., Am. VI. The United States Supreme Court has recognized that a primary objective of the Confrontation Clause is to compel a witness to "stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. U.S.*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 39 L.Ed. 409 (1895). The right of confrontation "is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Barber v. Page*, 390 U.S. 719, 721, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) (quotation marks and citation omitted).

jority "lay[s] waste [their] powers ... like lemmings running headlong to the sea ... oblivious,"[2] blithely relinquishing inherent judicial authority to the legislative branch. They also demonstrate an incredible lack of sensitivity to child sexual assault victims; they vitiate almost thirty years of West Virginia jurisprudence that has demonstrated compassion and understanding of the unique challenges facing child victims, especially in the context of a child facing a sexual predator, while still protecting a defendant's rights.

The issue before the Court is whether the trial court's use of closed-circuit television to present the testimony of a child victim violated the Confrontation Clause. The required elements of the Confrontation Clause are: 1) physical presence, 2) an oath, 3) cross-examination, and 4) "observation of demeanor by the trier of fact[.]" *Maryland v. Craig*, 497 U.S. 836, 846, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The combined effect of these elements ensures "that evidence admitted against an accused is reliable and subject to ... rigorous adversarial testing[.]" *Id.*

As pertains to the testimony of child abuse victims, the United States Supreme Court has also recognized, however, that the right of the accused to meet witnesses face-to-face is not absolute and the Confrontation Clause simply " 'reflects a *preference* for face-to-face confrontation at trial.' " *Craig*, 497 U.S. at 849, 110 S.Ct. 3157 (citation omitted). This preference, however, " 'must occasionally give way to considerations of public policy and the necessities of the case.' " *Id.* (quoting *Mattox*, 156 U.S. at 243, 15 S.Ct. 337). In *Craig*, the Court held that allowing the testimony of a child witness, who was alleged to be a victim of abuse, by way of one-way, closed circuit television did not violate the defendant's right of confrontation because the procedure adequately protected the other elements of the Confrontation Clause: the oath, the cross-examination, and the ability of the trier of fact to view the demeanor of the witness. The Court made clear, however, that this procedure may only be used if: 1) the trial court ensured that the testimony via a two-way medium was reliable, 2) the court's denial of the defendant's right to confront the witness in person furthered an important public policy, and 3) the court made a sufficient finding of necessity. *Id.* at 855, 110 S.Ct. 3157. The Court emphasized that "the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.*, more than 'mere nervousness or excitement or some reluctance to testify.' " *Id.* at 856, 110 S.Ct. 3157 (citation omitted). Significantly, the Court left this determination to the trial court.

The record in the instant case demonstrates the *Craig* requirements were plainly met, some implicitly, and the record supports the trial court's ultimate determination of necessity. From its vantage point, approximately three feet away from where the child witness was seated, the trial court found it was clear that the child was "becoming traumatized[.]" Therefore, the evidence established—in real time—the likelihood that the child would suffer emotional harm if required to testify in the petitioner's physical presence.[3] Furthermore, "[b]ecause there is no

---

**2.** William Wordsworth, The World is Too Much With Us (1807), JOHN BARTLETT, BARTLETT'S FAMILIAR QUOTATIONS, 394 (17th ed. 2002).

**3.** The trial court did not make an express finding that the trauma resulted from the presence of the petitioner in the courtroom but it is fair to conclude from the appendix record before us that the child witness suffered from more than ordinary courtroom nervousness. The victim appeared in open court initially, clutching her "cow pillow" for comfort, and answered some preliminary questions. However, when the Assistant Prosecuting Attorney asked substantive questions about sexual contact with the petitioner, her step-father, the victim could give no response. The trial court observed her demeanor, conducted an extremely sensitive colloquy with the child, had a hearing on the matter with counsel at the bench, and sought their suggestions on how to deal with the situation. Neither lawyer offered any suggestions. The court then found "this child is beginning to become ... traumatized as a result of this[.]" Furthermore, at the hearing held on the petitioner's post-trial motions, the Assistant Prosecuting Attorney stated that he did not observe it at the time of trial because his attention was directed to the victim, but he was advised later that the petitioner "was engaged in behavior which could have been interpreted" as intimidating to the victim. For instance, during the entirety of the victim's testimony in open court, the petitioner was clasping

dispute that the child witness[ ] in this case testified under oath, [was] subject to full cross-examination, and [was] able to be observed by the judge, jury, and defendant as [she] testified," the majority should have concluded that "to the extent that a proper finding of necessity has been made, the admission of such testimony ... [was] consonant with the Confrontation Clause." *Id.* at 857, 110 S.Ct. 3157.

Instead, the majority glosses over the real constitutional inquiry established by the Supreme Court in *Craig*, and diminishes the significant role of the trial court in carrying out that inquiry. In so doing, it elevates the statute not only to the gold standard for a fair criminal trial, but indeed permits the legislative branch to define what is constitutional. The majority robotically lays out the substantive law the legislature seeks to dictate by statute—rather than by Court rule or case law—and adopts it wholesale in a series of new syllabus points. The requirements to satisfy the Confrontation Clause as set forth by the majority, adopted in their entirety from the statute, are far more expansive than those required by *Craig*. Unfortunately, the majority's holding is built not only on the faulty foundation that the Legislature can impose mandatory, non-discretionary evidentiary and substantive procedural requirements on trial courts, but indeed that it can supersede the United States Supreme Court in resolving constitutional issues. This approach creates alarming precedent:

> "[I]f there is a principle in our Constitution ... more sacred than another," James Madison said on the floor of the First

his hands "as though praying, which reasonably the victim could assume was an intimidation to her."

Even assuming, arguendo, the *Craig* standards were not satisfied, the petitioner's Confrontation Clause argument still could not survive a harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (holding Confrontation Clause error is subject to harmless-error analysis). As the majority discusses, the State presented four different instances in which the petitioner confessed to sexually abusing the victim. Furthermore, counsel for the petitioner conducted a full cross-examination of the victim and the jury had the opportunity to assess her testimony and demeanor during this cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39

Congress, "it is that which separates the Legislative, Executive, and Judicial. powers." 1 Annals of Cong. 581 (1789). A strong word, "sacred." Madison was the principal drafter of the Constitution, and he knew what he was talking about. By diffusing federal powers among three different branches, and by protecting each branch against incursions from the others, the Framers devised a structure of government that promotes both liberty and accountability.

*Wellness Int'l Network, Ltd. v. Sharif*, —— U.S. ——, 135 S.Ct. 1932, 1954, 191 L.Ed.2d 911 (2015) (Roberts, C.J., dissenting).

A defendant's right to a fair trial[4] is a substantive right grounded in our Constitution, not in statutory enactments. The protection of constitutional rights is the central function of the judicial branch, not the legislative branch. *See Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518, 625, 4 L.Ed. 629 (1819) ("On the judges of this court, then, is imposed the high and solemn duty of protecting, from even legislative violation, those [rights] which the constitution of our country has placed beyond legislative control; and, however irksome the task may be, this is a duty from which we dare not shrink."); *State v. Solomon*, 157 N.H. 47, 943 A.2d 819, 824 (2008) ("The protection of constitutional rights is a core function of the judiciary.") (citation omitted); *U.S. v. Ghailani*, 686 F.Supp.2d 279, 290 (S.D.N.Y. 2009) ("Determining whether a person's constitutional rights have been violated and fashioning appropriate relief is a

L.Ed.2d 347 (1974) ("The main and essential purpose of confrontation is to *secure for the opponent the opportunity of cross-examination*.") (citation omitted).

4. Justice Black, writing for the Court, identified these rights as among the minimum essentials of a fair trial:

> A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

*In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

core, traditional function of American courts."). Accordingly, the majority's analysis should have focused on the petitioner's rights under the Confrontation Clause, rather than a mechanical application of West Virginia Code §§ 62–6B–1 to –4.

The rationale employed in *People v. Rose*, 289 Mich.App. 499, 808 N.W.2d 301 (2010), illustrates the proper analysis. In *Rose*, the court affirmed the defendant's conviction of first-degree criminal sexual conduct and disseminating sexually explicit matter to a minor. The court rejected the defendant's argument that the trial court's decision to permit the eight-year-old victim to testify using a one-way witness screen was reversible error because the state statute did not specifically permit the use of witness screens. The court in *Rose* recognized that the relevant inquiry was not whether the statute was violated, but whether the trial court's decision to use a witness screen violated the defendant's Sixth Amendment right to confront the witness. *Id.* at 310. The court explained that

> while trial courts may rely on [the statute] to afford witnesses certain protections, the existence of this statute does not preclude trial courts from using alternative procedures permitted by law or court rule to protect witnesses. And trial courts have long had the inherent authority to control their courtrooms, which includes the authority to control the mode and order by which witnesses are interrogated. MRE 611(a); *People v. Banks*, 249 Mich.App. 247, 256, 642 N.W.2d 351 (2002) ("It is well settled in Michigan that a trial court has broad discretion in controlling the course of a trial."). This inherent authority also includes the ability to employ procedures that limit a defendant's right to confront his accusers face to face even when the provisions of [the statute] do not apply[.]

*Id.*

The majority also ignores an ample, well-developed body of West Virginia law that holds it is the Court's role, not the Legislature's, to make determinations on evidentiary issues and substantive judicial procedure, and *eagerly gives slavish devotion to the authority of the Legislature with regard to evidentiary issues and criminal courtroom procedures.* However, "[t]he efficient administration of the judicial system is essential to our duty to implement justice in West Virginia; and, therefore, we must be wary of any legislation that undercuts the power of the judiciary to meet its constitutional obligations." *State ex rel. Frazier v. Meadows*, 193 W.Va. 20, 25, 454 S.E.2d 65, 70 (1994). Moreover, "the role of this Court is vital to the preservation of the constitutional separation of powers of government where that separation, delicate under normal conditions, is jeopardized by the usurpatory actions of the executive or legislative branches of government." *State ex rel. Steele v. Kopp*, 172 W.Va. 329, 337, 305 S.E.2d 285, 293 (1983).

One of our leading cases addressing the authority of the judicial branch is *Mayhorn v. Logan Medical Foundation*, 193 W.Va. 42, 454 S.E.2d 87 (1994). *Mayhorn* was a medical malpractice action against an emergency room physician and hospital. In the cross-assignment of error before this Court, the defendants argued that the trial court should not have allowed the plaintiff's expert to testify because he did not qualify as an expert under West Virginia Code § 55–7B–7 (1986). That statute provided, in relevant part, that "expert testimony may only be admitted in evidence if the foundation, therefor, is first laid establishing that: ... (e) *such expert is engaged or qualified in the same or substantially similar medical field as the defendant health care provider.*" *Id.* (emphasis added). This Court repudiated the legislative enactment that purported to set forth criteria for assessing the qualifications of a standard of care expert and held that Rule 702 of the West Virginia Rules of Evidence remained the paramount authority for determining whether an expert is qualified to give an opinion. *Id.* at Syl. Pt. 6. We explained that

> [t]his Court has complete authority to determine an expert's qualifications pursuant to its constitutional rule-making authority. *See W.Va. Const.* art. VIII, § 3 (which states, in relevant part, that the Supreme Court of Appeals of West Virginia "shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to

writs, warrants, process practice and procedure, which shall have the force and effect of law.") and syllabus point 1, *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988) ("Under article [VIII], section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law.") *See also* Cleckley, [2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* (3rd ed. 1994)] § 7–2(A)(1), at 30. Additionally, this Court recently held that "[t]he West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts. These rules constitute more than a mere refinement of common law evidentiary rules, they are a comprehensive reformulation of them." Syl. pt. 7, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994). *See also Teter v. Old Colony Co.*, 190 W.Va. 711, 724, 441 S.E.2d 728, 741 (1994).

*Mayhorn*, 193 W.Va. at 49, 454 S.E.2d at 94.

Writing for the Court, Justice Davis in *Louk v. Cormier*, 218 W.Va. 81, 622 S.E.2d 788 (2005), extended this principle by determining that legislative enactments which imposed non-discretionary duties upon trial courts in actions filed under the Medical Professional Liability Act were unconstitutional as violative of the separation of powers doctrine. We held in syllabus point three of *Louk* that

[t]he provisions contained in W. Va. Code § 55–7B–6d (2001) (Supp. 2004) were enacted in violation of the Separation of Powers Clause, Article V, § 1 of the West Virginia Constitution, insofar as the statute addresses procedural litigation matters that are regulated exclusively by this Court pursuant to the Rule–Making Clause, Article VIII, § 3 of the West Virginia Constitution. Consequently, W.Va.

Code § 55–7B–6d, in its entirety, is unconstitutional and unenforceable.

*Id.* 218 W.Va. at 84, 622 S.E.2d at 791. The Court acknowledged that consistent with its actions therein, it had "historically invalidated statutes that conflicted with rules promulgated by this Court." *Id.* at 88, 622 S.E.2d at 795.

The decisions in *Mayhorn* and *Louk* are illustrative of this Court's established position that "the legislative branch of government cannot abridge the rulemaking power of this Court." *In re Mann*, 151 W.Va. 644, 651, 154 S.E.2d 860, 864 (1967), *overruled on other grounds by Committee on Legal Ethics of W.Va. State Bar v. Boettner*, 183 W.Va. 136, 394 S.E.2d 735 (1990). Consistent with this precedent, the majority should have taken this opportunity to wholly reject the provisions of West Virginia Code § 62–6B–3(d) which invade judicial authority by purporting to establish a standard for expert testimony not consistent with our case law and expanding the requirements of the Confrontation Clause as set forth in *Craig*. Clearly, the statute at issue here conflicts with Rule 702 of the West Virginia Rules of Evidence. *See* W.Va.R.Evid. 101 (providing, in part, that "Rules of evidence set forth in any West Virginia statute not in conflict with any of these rules or any other rules adopted by the Supreme Court of Appeals shall be deemed to be in effect *until superseded by the rule or decision of the Supreme Court of Appeals of West Virginia.*") (emphasis added). The instant case was the perfect opportunity to reiterate the longstanding and widely-accepted principle that the judicial branch has the inherent authority to determine constitutionality and make its own rules of procedure. Instead, the majority lies down and plays dead in its slavish devotion to the Legislature. Despite our precedent directing that the legislative branch of government cannot abridge the rule-making authority of this Court, the majority sanctions it to do just that.[5]

---

**5.** I am cognizant that this Court's case law and procedural rules specifically acknowledge the limited applicability of certain statutory provisions. *See e.g., Hechler v. Casey*, 175 W.Va. 434, 449 n.14, 333 S.E.2d 799, 815 n.14 (1985) ("This Court's procedural rule, to the extent it conflicts

with the procedural statute, supersedes the statute."). However, the statute at issue herein directly affects both the standard for qualification as an expert and sets a peculiar rule different from any other type of case without justification.

Likewise, courts elsewhere have not hesitated to reject legislative attempts to infringe on their rule-making authority. As articulately explained by the concurring justice in *In re Florida Rules of Criminal Procedure*, 272 So.2d 65, 66 (Fla.1972) (Adkins, J., concurring), the Court's exclusive rule-making province "encompass[es] the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion. 'Practice and procedure' may be described as the machinery of the judicial process as opposed to the product thereof." The substantive right at issue herein is the defendant's right to confrontation. West Virginia Code § 62–6B–3 plainly purports to prescribe the manner, means, and method by which that right is preserved as pertains to child witnesses. This is "a function with which the legislature may not meddle or interfere save as the Court may acquiesce and adopt for retention at judicial will." *Perin v. Peuler*, 373 Mich. 531, 130 N.W.2d 4, 10 (1964) *modified by McDougall v. Schanz*, 461 Mich. 15, 597 N.W.2d 148 (1999). As the Pennsylvania Supreme Court observed, "[t]he sole responsibility for the administration of the judicial system and all the procedural problems inherent therein devolves upon this Court. Consequently, it is not the legislators who are held accountable by the public for the efficient and orderly administration of the courts, but the judiciary itself." *Laudenberger v. Port Auth. of Allegheny Cty.*, 496 Pa. 52, 61, 436 A.2d 147, 152 (1981).

That West Virginia Code § 62–6B–1 to –4 is a statutory scheme prescribing *procedures* and the *evidentiary* basis upon which those procedures may be invoked is beyond cavil. The constitutional issue raised by the use of such procedure is the defendant's constitutional right to confrontation. It is the *sole* province of this Court to prescribe rules which ensure the protection of a defendant's constitutional rights. Moreover, subject to review *only* by this Court, it is the trial court's exclusive province to utilize its discretion to assess the necessity of and oversee the use of alternative procedures for the taking of child victim testimony. West Virginia Code § 62–6B–1 to –4 is an unmistakable invasion of the judiciary's province in this regard and must

be rejected by this Court just as courts elsewhere have done with similar legislative encroachments. *See Barsema v. Susong*, 156 Ariz. 309, 751 P.2d 969, 974 (1988) ("Under the state constitution, we can[not] … allow the legislature to … substitute a different analytical framework or make special rules for a particular case, setting aside those evidentiary rules which over the centuries have been found necessary to ensure fair trials."); *State v. Mallard*, 40 S.W.3d 473, 483 (Tenn. 2001) ("[T]the legislature can have no constitutional authority to enact rules, either of evidence or otherwise, that strike at the very heart of a court's exercise of judicial power[.]"); *People v. Watkins*, 491 Mich. 450, 818 N.W.2d 296, 324–25 (2012) (" 'The legislature has no more right to break down the rules prescribed by this court to assure fundamental due process in criminal and civil trials than the court has to prescribe the mode and manner in which the legislature shall perform its legislative duties.' "); *Massey v. David*, 979 So.2d 931, 937 (Fla. 2008) ("[W]here this Court has promulgated rules that relate to practice and procedure, and a statute provides a contrary practice or procedure, the statute is unconstitutional to the extent of the conflict."); *Schoenvogel ex rel. Schoenvogel v. Venator Grp. Retail, Inc.*, 895 So.2d 225, 234 (Ala. 2004) (citations omitted) ("The Legislature exceeds its power in the area of rulemaking if its action 'prohibits the due and orderly processes by which [a] court functions, or prevents it from properly functioning,' or disturbs the functions and orderly processes of the court[.]")

This Court has not previously addressed the provisions set forth in West Virginia Code §§ 62–6B–1 to –4 in a signed opinion. By the plain language of the statute, those procedures are triggered only "[u]pon a written motion filed by the prosecuting attorney, the child's attorney or the child's guardian ad litem[.]" *Id.* § 62–6B–3(a). Thus, even if the majority wished to hold that the statute trumps judicial authority on evidentiary and substantive procedural matters, those statutory procedures were not initiated in this case *at all*—either pre-trial or during trial—because no such motion was ever filed. The statute itself is silent as to whether a trial

court may, sua sponte, permit a child witness testify via videoconferencing when a clear and unequivocal necessity arises during the course of a ,trial. Thus, even the majority's passive acceptance of legislative dictates would not apply in that the statute limits its requirements to situations where a motion is made in advance of trial. Further, the authority of the court conducting the judicial proceeding should not be hamstrung by either counsel's failure to act.

In addition, West Virginia Code §§ 62–6B–1 to –4, sets forth mandatory procedural requirements for trial courts, even though the West Virginia Rules of Criminal Procedure are intended to constitute a comprehensive procedural code for criminal cases in the trial courts. Even the Rules themselves afford trial courts great discretion via Rule 57(b) which provides: "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute." The "general import of Rule 57 is to maintain flexibility within the criminal procedure system." *State v. Nichols*, 325 A.2d 28, 33 (Me. 1974). Wide latitude is reposed in the trial court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice. *See e.g., U.S. v. Baird*, 414 F.2d 700, 710 (2d Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970) ("A federal court has the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness."). I am persuaded that

> [i]t would be ill-advised to limit improvidently this inherent power for fear of misuse. The firing point of the legal system is with the trial judge who is best situated to administer the law and protect the rights of all. Such discretion is not limitless, but appellate review provides a proper check.

*U.S. v. Richter*, 488 F.2d 170, 174 (9th Cir. 1973).

To the extent the statutes seem to dictate precisely how a trial court *must* conduct such hearings, they have the practical effect of reducing trial court judges to mere puppets who lack discretion over witness examination. This result is wholly inconsistent with the plain language of West Virginia Rule of Evidence 611 which provides:

> (a) *Control by the court; purposes*. The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
>
> (1) make those procedures effective for determining the truth;
>
> (2) avoid wasting time; and
>
> (3) protect witnesses from harassment or undue embarrassment.

To resolve the conflict between the rule and statute, this Court should have reiterated long-standing principles by holding that as a result of the authority granted to this Court by the Rule–Making Clause, West Virginia Constitution art. VIII, section 3, " 'a statute governing *procedural* matters in criminal cases which conflicts with a rule promulgated by the Supreme Court would be a legislative invasion of the court's rule-making powers.' " *State v. Arbaugh*, 215 W.Va. 132, 138, 595 S.E.2d 289, 295 (2004) (Davis, J., dissenting) (quoting *People v. Hollis*, 670 P.2d 441, 442 (Colo.Ct.App.1983)). *See also* Syl. Pt. 5, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999) ("The West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction; any statutory or common-law procedural rule that conflicts with these Rules is presumptively without force or effect.").

Accordingly, the new syllabus points in the instant case *should* have been as follows:

> To the extent that the provisions of W. Va. Code § 62–6B–3 exceed the requirements for the testimony of child witnesses via one-way, closed circuit television contained in *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), such provisions are in violation of the Separation of Powers Clause, Article V, § 1 of the West Virginia Constitution, inasmuch as they invade the exclusive province of this Court pursuant to the Rule–Making Clause, Article VIII, § 3 of the West Virginia Constitution.

> Insofar as the trial court complies with the requirements of *Maryland v. Craig*,

497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), West Virginia Rule of Evidence 661(a) grants the trial court the inherent authority and discretion to *sua sponte* take the testimony of a child victim in a criminal trial via one-way, closed-circuit television.

To the extent that a trial court utilizes expert testimony to determine the necessity of permitting a child victim to testify via one-way, closed-circuit television, such testimony may be considered by the trial court insofar as it complies with Rule 702 of the West Virginia Rules of Evidence.

To the extent that the provisions of W. Va. Code § 62–6B–3(d) contain additional restrictions on any such expert or expert testimony, such provisions are in violation of the Separation of Powers Clause, Article V, § 1 of the West Virginia Constitution, inasmuch as they invade the exclusive province of this Court pursuant to the Rule–Making Clause, Article VIII, § 3 of the West Virginia Constitution.

The majority's statement that: "These procedural safeguards are contained not only in the aforementioned statute, but are also required by … the Supreme Court's holding in *Maryland v. Craig*" is immensely troubling and simply untrue. The procedural requirements contained within the statute go far beyond the requirements set forth in *Craig*. For instance, *Craig* would not require a trial court to "appoint a psychiatrist or a licensed psychologist with at least five years clinical experience" to provide the court with an expert opinion. W.Va. Code § 62–6B–3(d).

In fact, a trial court could make the necessary *Craig* determinations without relying on live expert testimony at all. *Craig* simply requires that the trial court hear "evidence" on the factors before making its determination; the parties could submit that evidence in many forms such as a written report from a psychologist or a proffer from the prosecuting attorney who interviewed the child witness. Further, as was done in this case, the trial court could call a bench conference hearing to make its own observations and seek input from counsel, consistent with

*Craig*, when a child witness attempts to testify at trial but is unable. Here, the trial court found it was necessary to move the child witness out of the courtroom to finish her testimony via live closed-circuit television because she was becoming traumatized. The trial court sought alternative suggestions from counsel, but heard none.

Additionally, Trial Court Rule 14.03(b) provides that a court "*may* use videoconferencing to obtain the testimony of a child witness in accordance with West Virginia Code § 62–6B–1 to –4.") (emphasis added). The word "may" generally is afforded a permissive connotation, which renders the referenced act discretionary, rather than mandatory, in nature. *See e.g., State v. Hedrick,* 204 W.Va. 547, 552, 514 S.E.2d 397, 402 (1999) ("The word 'may' generally signifies permission and connotes discretion." (citations omitted)); *Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher,* 174 W.Va. 618, 626 n.12, 328 S.E.2d 492, 500 n.12 (1985) ("An elementary principle of statutory construction is that the word 'may' is inherently permissive in nature and connotes discretion." (citations omitted)). Thus, under the current language of Trial Court Rule 14.03(b), the trial court had the discretion to proceed in accordance with West Virginia Code § 62–6B–1 to –4, or not.[6]

Finally, while acknowledging the trial court "did not have the opportunity to comply with" the statutory scheme set forth in West Virginia Code § 62–6B–1 to –4 because no party made a motion for it to do so either in advance of trial or during the trial, the majority nevertheless launches into a comprehensive discussion of those statutes. This analysis was, as previously discussed, a misdirected attempt to resolve the Confrontation Clause issue by relinquishing judicial authority to the legislative branch. More to the point, however, it was wholly unnecessary because the petitioner failed to preserve this issue for appeal.

As explained above, there was no error in the manner in which the trial court allowed the child witness to testify. Moreover, the

---

6. Nevertheless, I urge this Court to adopt broader language in West Virginia Trial Court Rule 14.03(b) to expressly acknowledge that trial

courts have the latitude to employ alternative procedures permitted by law to protect child witnesses while testifying.

"fundamental fairness or basic integrity of the proceedings" was not compromised; to the contrary, it was enhanced. The procedures utilized by the trial court in this case were "effective for determining the truth" and necessary to protect the child witness from "undue embarrassment" and trauma. W.Va.R.Evid. 611(a); *see also Globe Newspaper Co. v. Superior Court of Norfolk Cty.*, 457 U.S. 596, 607, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (recognizing State has strong interest in "the protection of minor victims of sex crimes from further trauma and embarrassment"). Furthermore, the procedure utilized by the trial court avoided the waste of time, expense, and additional victim trauma of an unnecessary mistrial. Once the trial court made its "case-specific finding of necessity," the Confrontation Clause did not prohibit it from moving forward with the use of live closed-circuit television procedure "for the receipt of testimony by a child witness in a child abuse case." *Craig*, 497 U.S. at 861, 110 S.Ct. 3157.

Accordingly, the manner in which the majority resolved this case was not only wrong, it compromises the core adjudicatory functions of the judiciary to resolve cases fairly and impartially and to protect the constitutional rights of all persons who come before the trial courts. The majority undermines our body of case law that has demonstrated exquisite sensitivity to children who are victims of sexual assault by permitting courts to utilize constitutionally permissive measures for taking their testimony while still protecting them from undue embarrassment and trauma. Hopefully, the majority opinion will be nothing more than a blip on the landscape of more than thirty years of West Virginia jurisprudence.